1  BENJAMIN B. WAGNER
   United States Attorney
2  DAVID L. GAPPA
   Assistant United States Attorney
3  MEGAN A. S. RICHARDS
   Special Assistant United States Attorney
4  United States Courthouse
   2500 Tulare Street, Suite 4401
5  Fresno, California 93721
   Telephone:  (559) 497-4000
6  Facsimile:  (559) 497-4099

7  Attorneys for the United States of America

8              **UNITED STATES DISTRICT COURT**

9             **EASTERN DISTRICT OF CALIFORNIA**

10
   UNITED STATES OF AMERICA,     ) Case No. 1:11-cr-00171 LJO
11                               )
                  Plaintiff,     ) **GOVERNMENT TRIAL BRIEF**
12                               )
                                 ) Date:      October 2, 2012
13       v.                      ) Time:      8:30 a.m.
                                 ) Ctrm:      Four
14                               ) Hon:       Lawrence J. O'Neill
   ERIC PAUL VALLEJOS,           )
15                               )
                  Defendant.     )
16 _____)

17      The United States of America, by and through its attorneys,

18 Benjamin B. Wagner, United States Attorney, David L. Gappa,

19 Assistant United States Attorney, and Megan A. S. Richards,

20 Special Assistant United States Attorney, files this trial brief

21 to aid the court in understanding this case and issues that might

22 arise at trial.

23 Dated: September 28, 2012          Respectfully submitted,

24
                                     BENJAMIN B. WAGNER
25                                   United States Attorney

26                           By:     /s/ David L. Gappa
                                     DAVID L. GAPPA
27                                   Assistant U.S. Attorney
                                     MEGAN A. S. RICHARDS
28                                   Special Assistant U.S.
                                     Attorney

                                     1

**I.**

**INTRODUCTION AND CASE STATUS**

**A.   Trial Status**

Trial is set to begin Tuesday, October 2, 2012, at 8:30 a.m., before the Honorable Lawrence J. O'Neill, United States District Judge.   Assuming a jury were seated by early Tuesday afternoon, the government estimates completing the presentation of its case no later than Wednesday, October 3, 2012.   Thus far the government has not received a single item of discovery, nor has the defendant identified any potential witnesses or exhibits.

**B.   Charges**

On May 12, 2011, the grand jury returned a one-count indictment charging defendant Eric Paul Vallejos ("defendant") with Receipt or Distribution of Child Pornography in violation of 18 U.S.C. §2252(a)(2).   More specifically, this count alleges that from in or about September 2010, and continuing through approximately October 6, 2010, in Stanislaus County and elsewhere, the defendant knowingly received and distributed at least one visual depiction of a minor engaged in sexually explicit conduct with that image having been transported in interstate or foreign commerce or having been sent or received using any means or facility of interstate or foreign commerce, or which contained materials that had been mailed, shipped, or transported in interstate or foreign commerce by any means, including by computer.

///

///

C.   **Miscellaneous Matters**

    1.   The United States estimates its case-in-chief can be presented within two full court days.

    2.   Trial by jury has not been waived by the parties.

    3.   The defendant has not agreed to stipulate to any facts.

    4.   The government expects to call approximately three to eight witnesses in its case-in-chief and/or as potential rebuttal witnesses.  Testimony from all but one witness, Detective Art Hively, should be brief.

**II.**

**<u>STATEMENT OF FACTS</u>**

A.   **September 16, 2010 Ceres Department of Public Safety Undercover Investigation Revealing Defendant to Have Been Making Child Pornography Publicly Available Through the Peer-to-Peer File Sharing Network**

The defendant came to the attention of the Ceres Department of Public Safety on September 16, 2010, when Detective Arthur Hively checked for recent activity for IP addresses in Stanislaus County that were sharing child pornography files.  Detective Hively determined that an IP address (76.20.107.91), subsequently linked to the defendant, was making numerous images of child pornography available through Limewire, a peer-to-peer[1] file-sharing software program that operates on the Gnutella network.[2]

---

[1] More detailed information about the internet, peer-to-peer programs and networks, Internet Protocol addresses, SHA-1 values, and the LimeWire program used by the defendant in this case can be found in Government's (Proposed) Exhibits 1-4.  The United States intends to present testimony from Detective Hively who has extensive experience using the software programs relevant to this case to explain relevant concepts and terms to the jury.

[2] LimeWire is a file-sharing program that the defendant downloaded from the internet.  It allows users to search for and share with one another various types of files, including movies and pictures, on other people's computers who have installed LimeWire. Once a user downloads the program onto his computer, the user can click on an icon that connects his computer to

1   All of the files that Detective Hively noticed contained terms

2   known to be associated with child pornography, including:

3           5YO girl drulling from cum from big blow job Mafia sex
            Pedo Pedophilia...

4
            7yo MafiaSex.Ru_Children_Kids_Hard...ChildPorn_
5           Collection...

6       Detective Hively downloaded five digital files from the

7   computer associated with the IP address.  These files contained

8   movies that depicted nude, pre-pubescent minors both

9   provocatively posed and prominently exposing their genitalia, as

10  well as engaged in sexually explicit acts.  The government

11  intends to introduce several of these files as Exhibits (as parts

12  of 5.1-5.11).

13      Detective Hively verified that IP address 76.20.107.91 was

14  located in Modesto, CA, within the Eastern District of

15  California.  After determining that the IP address belonged to

16  Comcast Cable, Detective Hively then obtained a search warrant

17  for subscriber information for that IP address.  He learned from

18  the Comcast legal compliance center that Eric Vallejos at 223

19  Kingston Lane, Modesto, CA, was the subscriber for that IP

20  address.  Detective Hively also determined that there was no

21  unsecured wireless network being made available at the

22  subscriber's physical address.

23  ///

24  ///

25

26

27  others on the network. In order to obtain files from other users on the
    network, a user must input one or more search terms, review a list of
28  responsive files, and then click on the particular file(s) to begin the
    download process.  See United States v. Ganoe, 538 F.3d 1117, 1119 (9th Cir.
    2008); see also United States v. Stults, 575 F.3d 834, 842 (8th Cir. 2009).

                                      4

**B.     Execution of the Warrant to Search Defendant's Home and Computer on October 6, 2010**

On October 4, 2010, Detective Hively applied for a state search warrant to search the premises where the computer making child pornography files was believed to be located.  Stanislaus County Superior Court Judge Timothy Salter issued the search warrant, and it was executed on October 6, 2010.  The defendant was not at the residence in Modesto when law enforcement executed the warrant.  However, his girlfriend, who stated that she lived with the defendant as husband and wife, was present with her four year old son.  Another adult who lived in the home, Jermaine Joseph West, was not present.

The defendant called Detective Hively that afternoon after defendant was contacted by his girlfriend.  Defendant told Detective Hively that he knew that there was a search warrant and that law enforcement officers had conducted the search in order to look for child pornography.  Defendant then told Detective Hively that he was the one responsible for the child pornography.

Defendant stated that on the shared computer, he had his own area with the user name "Eric" and that this user area was password protected.  Defendant explained that he downloaded the peer-to-peer program LimeWire six months before the search and a few months ago he "tripped across" child pornography.  He then copied some of the terms in the titles he had seen and used those terms in the search text box.  This allowed him to download and view more child pornography.

The next day, on October 7, 2010, defendant came to the police department to meet with Detective Hively and discuss his

5

involvement in the receipt or distribution of child pornography files.  At the time that Detective Hively spoke to the defendant, he had conducted a preliminary (but incomplete) forensic examination of the defendant's computer.

The defendant confessed to receiving child pornography through use of LimeWire on his computer, and he stated that had sought this material, because he became somewhat desensitized with adult pornography.  He stated that he wanted to see what other material was available to him.  Defendant admitted: (1) that he had accessed child pornography for the previous three months; (2) preferred to see material depicting girls about 13 years old who were just starting the maturation process; (3) that he had watched videos of younger children; (4) thought that it was not right what some of the children in the videos had to go through; and (5) that he had masturbated after viewing several of the videos.

**C.    Subsequent Forensic Analysis of Defendant's Computer and the May 12, 2011 Indictment**

As mentioned, a grand jury returned an indictment against the defendant on May 12, 2011, that charges him with receipt/distribution of child pornography.  Detective Hively had located 31 thumbnail images of child pornography in defendant's LimeWire saved folder.  Some of the images matched images that Detective Hively had downloaded from defendant's computer during his September 16, 2010, investigation.  He also located partially downloaded files from LimeWire located in a Limewire "Incomplete" folder.  Of these files, Detective Hively was able to play 21

1  videos and view three additional child pornography still images.

2  Lastly, in the unallocated space of the computer, Detective

3  Hively uncovered two additional movie files.  In total, there

4  were at least twenty movie videos and fifty still images found on

5  defendant's computer that depicted minors being sexually abused.

6  The images and videos largely depict pre-pubescent minors engaged

7  in sexually explicit conduct, including various acts of sexual

8  intercourse with adults.

9      The government anticipates calling Federal Bureau of

10  Investigation Special Agent Henry Scot Huntsberry, currently

11  employed in Jacksonville, Florida, as a fact witness to confirm

12  that at least one of the victims depicted in the images located

13  on defendant's computer is a real child and that she was

14  victimized as a minor outside of California (in North Carolina).

15  **III.**

16  **<u>APPLICABLE STATUTE AND ELEMENTS OF THE OFFENSE</u>**

17  **A.   Count One:**   Receipt of Material Involving the Sexual
                        Exploitation of Minors - 18 U.S.C. §
18                      2252(a)(2)

19      Count One charges that the defendant received or distributed

20  material depicting the sexual exploitation of minors between

21  approximately September 2010 and October 6, 2010.  In order to

22  prove the crime of Receipt or Distribution of Material Involving

23  the Sexual Exploitation of a Minor, the following elements must

24  be established beyond a reasonable doubt:

25      (1)  The defendant knowingly received or distributed;

26      (2)  Any visual depiction that had been:

27          (a)  received or distributed through the use of any
                 means or facility of interstate commerce,
28               including by computer, *or*

(b) mailed, shipped, or transported in interstate or foreign commerce by any means, including by computer; *or*

(c) that the visual depiction contained any material that had been mailed, shipped, or transported in interstate or foreign commerce; *or*

(d) the image is received or distributed or affecting interstate or foreign commerce; and

(3) The producing of such visual depiction(s) involved the use of a minor engaging in sexually explicit conduct; and

(4) The defendant knew the visual depiction was of a real minor engaged in such conduct.

**D.   Statutory Definitions**

Many of the terms used above are statutorily defined, including:

1.   <u>Minor</u>: "Minor" means any person under the age of eighteen years.   18 U.S.C. § 2256(1)

2.   <u>Sexually Explicit Conduct</u>: "Sexually Explicit Conduct means actual or simulated:

(i) sexual intercourse, including genital-genital, oral-genital, anal-genital, or oral-anal, whether between persons of the same or opposite sex;

(ii)  bestiality;

(iii) masturbation;

(iv) sadistic or masochistic abuse; or

(v) lascivious exhibition of the genitals or pubic area of any person.   18 U.S.C. § 2256(2)

In determining whether a depiction includes Lascivious Exhibition of the Genital or Pubic Area of Any Person, the trier of fact may consider any of the following factors:

(1) Whether the focal point of the depiction is the child's genital or pubic area;

(2) Whether the setting of the depiction is sexually suggestive, for instance, the setting is in a place or pose generally associated with sexual activity;

(3) Whether the child is depicted in an unnatural pose or in inappropriate attire, considering the age of the child;

(4) Whether the child is fully or partially clothed or is nude;

(5) Whether the depiction suggests sexual coyness or a willingness to engage in sexual activity;

(6) Whether the depiction is intended or designed to elicit a sexual response from the viewer.

United States v. Overton, 567 F.3d 1148, 1151 (9th Cir. 2009) (quoting United States v. Dost, 636 F.Supp. 828, 832 (S.D. Cal. 1986)).

Additionally, whether a depiction is lewd or lascivious should be viewed from the perspective of the photographer, not from the perspective of the minor being photographed.  An exhibition of the genitals or pubic area may encompass a visual depiction of a child's genital or pubic area even where those areas are covered by clothing.  United States v. Dost, 636 F.Supp. 828, 832 (S.D. Cal. 1986); United States v. Wiegand, 812 F.2d 1239, 1244 (9th Cir. 1987).

3.  Producing: "Producing" means producing, directing, manufacturing, issuing, publishing, or advertising.  18 U.S.C. §2256(3).

4.  Visual Depiction: "Visual Depiction" includes undeveloped film and videotape, and data stored on computer disk or by electronic means which is capable of conversion into a visual image.  18 U.S.C. 2267(5).

5.  Computer: "Computer" means an electronic magnetic, optical, electrochemical, or other high speed data processing device performing logical, arithmetic, or storage functions, and includes any data storage facility or communications facility directly related to or operating in conjunction with such device, but such term does not include an automated typewriter, or portable hand held calculator, or other similar device.  18 U.S.C. §§ 1030(e)(1) and 2256(6).

The Ninth Circuit's applicable jury instructions are consistent with the above statutory definitions.

"Visual depiction" includes undeveloped film and video tape, and data that has been stored on computer disk or data that has been stored by electronic means and that is capable of conversion into a visual image.

A "minor" is any person under the age of 18 years.

"Sexually explicit conduct" means actual or simulated sexual intercourse, bestiality, masturbation, sadistic or masochistic abuse, or lascivious exhibition of the genitals or pubic area of any person.

"Producing" means producing, directing, manufacturing, issuing, publishing, or advertising.  9th Cir. Model Crim. Jury Instr. 8.154 (2003).

6.  Interstate Commerce:  Title 18, United States Code, Section 2252 makes clear that the interstate nexus element of each violation is satisfied by proof that any (1) image depicting child exploitation, or any (2) instrument that was used to produce the image, traveled in interstate commerce, that is between state lines.  The statute also makes clear that travel

accomplished by means of a computer and/or the internet will

satisfy the required element.  See United States v. Schaffner,

258 F.3d 675 (7th Cir. 2001).

The Ninth Circuit has found a "nexus to interstate commerce"

where "activities ... have an economic or commercial character,"

such as possession of "commercial" child pornography.  United

States v. Adams, 343 F.3d 1024, 1028 (9th Cir. 2003).  In Adams,

the defendant admitted "that he viewed and possessed 'prohibited

images' downloaded from the Internet," and was therefore

convicted of possession of child pornography, in violation of

Title 18, United States Code, Section 2252(a)(4)(B). Id. at 1027.

In addition, the Ninth Circuit has found in dicta that the

Internet and mail order catalogs provide an interstate market for

new material for many pornographers.  United States v. McCoy, 323

F.3d 1114, 1139-40 (9th Cir. 2003).

In April 2006, the Third Circuit held that "the Internet is

an instrumentality and channel of interstate commerce."  United

States v. MacEwan, 445 F.3d 237 (3rd Cir. 2006).  The court held

that in a child pornography case, where there was evidence that a

defendant downloaded images from the Internet, sufficient

evidence existed for a trier of fact to find that the interstate

commerce jurisdiction element of 2252A(a)(2)(B) had been met

beyond a reasonable doubt.  In addition, the Fifth Circuit held

that, in the context of a child pornography trial, circumstantial

evidence tying particular images of child pornography to the

Internet, was sufficient to establish that the images were

"transported in interstate commerce" within the meaning of

§2252A.  <u>United States v. Runyan</u>, 290 F.3d 223, 242 (5th Cir. 2002).

Proof of transmission of pornography over the internet or over telephone lines also satisfies the interstate commerce element of the offense.  <u>United States v. Hilton</u>, 257 F. 3d 50, 54 (1st Cir. 2001).  Transmission of photographs by means of the Internet "is tantamount to moving photographs across state lines and thus constitutes transportation in interstate commerce." <u>United States v. Carroll</u>, 105 F.3d 740, 742 (1st Cir. 1997); <u>see also</u> <u>United States v. Kimler</u>, 335 F.3d 1132, 1138 n.7 (10th Cir. 2003) (stating that even if the ultimate source of child pornography images is an intrastate distributor, a defendant's activity "would still be interstate if, as the evidence at trial established, he sent and received the images in interstate commerce over the internet").

Alternatively, presenting evidence of an electronic device's "country-of-origin labels", which indicate that the device had been manufactured outside of California, also constitutes sufficient evidence in the Ninth Circuit "to prove that [it] moved in foreign commerce." <u>United States v. Fox</u>, 357 Fed. Appx. 64, 65 (9th Cir. 2009) (<i>citing</i> <u>United States v. Patterson</u>, 820 F.2d 1524, 1526 (9th cir. 1987)).  The government may seek to introduce such evidence of the devices found to contain contraband through the <u>Fox</u> jurisprudence and/or Federal Rule of Evidence 807.

7.  <u>Knowingly</u>: An act is done "knowingly" if done voluntarily and intentionally, and not because of mistake or accident or other innocent reason.  In this case, the term

"knowingly" extends to an awareness that the material depicted a minor engaging in sexually explicit conduct.   Therefore, the government must show that the defendant had knowledge of the general nature of the contents of the material.   Although the defendant need not know the specific content of the material or the actual age of the underage subject, the defendant must have had an awareness, notice, reason to know, or a belief or ground for belief warranting further inspection, that the material contained a visual depiction of a minor engaging in sexually explicit conduct.

The defendant may be convicted of receiving child pornography only upon showing that he knew a matter in question contained unlawful visual depictions.   Knowledge of the nature of the material is an element of the offense of possessing [or receiving] child pornography.   <u>United States. v. Lacy</u>, 119 F. 3d 742, 747 (9th Cir. 1997), <u>cert denied</u>, 523 U.S. 1101 (1998).   A defendant's knowledge may be shown by direct or circumstantial evidence, or both.   Eyewitness testimony of the defendant's receipt or viewing of illegal images of child pornography is not necessary to prove his awareness of its contents; the circumstances may warrant the inference that he was aware of what the material depicts.   Furthermore, although relevant, the defendant's belief as to the legality or illegality of the material is not controlling.   9th Cir. Crim. Jury Inst. 3.18 (2000); Devitt & Blackmar, <u>Federal Jury Practice and Instructions</u> (4th Ed. 1990), §36.15; <u>United States v. X-Citement Video, Inc</u>., 115 S. Ct. 464 (1994).   In this case, as noted above, the evidence amply establishes that defendant downloaded a multitude

of videos of minors engaged in sexually explicit conduct onto his computer.

The government intends to prove that the defendant acquired, and made available to others, child pornography still and video files that all contained highly descriptive titles that reflected the content in which the defendant was interested.  The titles have particular relevance to this case, because they are the means by which searches on the gnutella network are conducted. Once a search term is entered, the LimeWire software transmits the query to other computers connected to the network and responds with a list of files that contain the search term(s). The person making the request then reviews the files available for transfer and, if interested in acquiring any of the files, double clicks on the file title.  Thus, the process by which the child pornography files in this case were acquired provides insight into the defendant's intent to seek that material and his knowledge that it was on his computer.

8.  <u>Possession</u>: A person has possession of something if the person knows of its presence and has physical control of it, or knows of its presence and has the power and intention to control it.  9th Cir. Crim. Jury Inst. 3.18 (2000).  <u>See</u> <u>United States v. Cain</u>, 130 F. 3d 381, 382-84 (9th Cir. 1997); <u>United States v. Terry</u>, 911 F. 2d 272, 280 (9th Cir. 1990).

9.  <u>Receipt</u>: The common Oxford English Dictionary definition of the word "receive" is: "to take into one's possession;" to "take delivery of." <u>See</u> <u>United States v. Mohrbacher</u>, 182 F. 3d 1041, 1048 (9th Cir. 1999); BLACK'S LAW DICTIONARY 1268 (6th ed.

1990)('To take into possession and control; accept custody of; collect.')." Id.

"*An individual who downloads material takes possession* or accepts delivery of the visual image; he has therefore *certainly received it.* In fact, guides to computer terminology often analogize downloading to receiving information and uploading to transmitting or sending." Mohrbacher, 182 F. 3d 1041, 1048 (9th Cir. 1999) (emphasis added).

A customer of those who make such visual depictions available who is simply on the receiving end and who downloads an image that has been made available through an automated, pre-configured process or that has been sent by another computer user, is guilty of receiving or possession such material. Id., at 1050.

**IV.**

**EVIDENTIARY ISSUES**

As noted above, the evidence in this case consists of files downloaded from various sources on the internet, and stored on defendant's desktop computer. More specifically, they were received from the internet, accessed, and placed into specified folders onto the defendant's computer.

**A.   Expert Testimony**

A witness who is "qualified as an expert by knowledge, skill and experience" may present expert testimony if his or her specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue. Fed. R. Evid. 702; United States v. Espinoza, 827 F.2d 604, 612 (9th Cir. 1987).

The admission of expert testimony is a matter within the sound discretion of the trial court. United Stated v. Kinsey, 843 F.2d 383, 387-89 (9th Cir. 1988); United States v. Anderson, 813 F.2d 1450, 1458 (9th Cir. 1987).

The government has provided notice to defense counsel that parts of the testimony of at least one witness might be considered that of an "expert." Under Federal Rule of Evidence 702, Ceres Police Department Detective Art Hively will testify about what computers are, how they operate, what the internet is, and how peer-to-peer file-sharing programs work. The government will also elicit testimony about his forensic analysis of the defendant's computer and various matters concerning digital transmissions by computer. Detective Hively has been designated as an expert witness under Rule 16(a)(1)(G). The government provided to the defense the qualifications, opinions, and bases for these opinions. In addition, Detective Hively's forensic reports have been provided in the discovery process or otherwise made available to defendant in accordance with the Adam Walsh Act.[3]

**B. Computer Files In General**

The standard for authenticating computer records is the same for authenticating other records and does not vary simply because the record happens to be originally in electronic form. United States v. Vela, 673 F.2d 86, 90 (9th Cir. 1982). The witness who testifies to the authenticity of the computer record need not

---

[3] Conversely, and "agree[ing] with every other circuit that has ruled on the issue," the Ninth Circuit holds "expert testimony is not required for the government to establish that [child pornography] images depicted an actual minor." United States v. Salcido, 506 F.3d 729, 733-34 (9th Cir. 2007).

have special qualifications and need not have programmed the computer or even understand the technical operation of a computer.  <u>United States v. Salgado</u>, 250 F.3d 438, 453 (6th Cir. 2001) ("it is not necessary that the computer programmer testify in order to authenticate the computer generated records.") Instead, the witness need only have first-hand knowledge of the facts to which they testify, such as examining or seizing the computer from which the records were obtained.  <u>United States v. Whitaker</u>, 127 F.3d 595, 601 (7th Cir. 1997).

The authenticity of the computer program itself is also generally not a bar to the admission of evidence derived from the use of such a program.  Such a challenge is defeated by providing sufficient facts to support a finding that the records are trustworthy and the opposing party is afforded the opportunity to inquire into the accuracy of such records.  <u>United States v. Briscoe</u>, 896 F.2d 1476 1494-95 (7th Cir. 1990).  Typically, the reliability of a computer program can be established by showing that the users of the program actually do rely upon it on a regular basis.  <u>Id</u>., at 1494 (holding that computerized records held by a telephone company were admissible).

In the present case, Detective Hively, who forensically analyzed the computer and its internal hard drives, will testify that computer programs (such as EnCase) were utilized to retrieve much of the information found on the seized computer and its hard drives.  Such programs are well known and are a generally accepted means of conducting a forensic examination of a computer for the purpose of retrieving evidence.  Considering the fact that defense experts commonly rely upon the same program, the

government has neither received nor anticipates receiving any objections to the use of exhibits extracted with this forensic software. See, e.g., United States v. Giberson, 527 F.3d 882, 885-889 (9th Cir. 2008) (endorsing use of similar program "iLook" as a forensics tool in child pornography cases).

1. Computer-Generated Documents and Business Records

Under Federal Rule of Evidence 803(6), business records are not excluded by the hearsay rule, even if maintained by a computer and the declarant is available as a witness, if:

(A) the record was made at or near the time by - or from information transmitted by - someone with knowledge;

(B) the record was kept in the course of a regularly conducted business activity;

(C) making the record was a regular practice of that activity; and

(E) neither the source of information nor the method or circumstances of preparation indicate a lack of trustworthiness.

If the above conditions are shown by certification that complies with Rule 902(11), then a business record is properly admissible even if the custodian does not testify. Fed. R. Evid. 803(6)(D). In order to comply with Rule 902(11), the proponent of the record must provide: (1) an original or copy of the business record, (2) an attendant certification of the custodian or another qualified person stating that the record meets the requirements of FRE 803(6), and (3) the adverse party before the trial or hearing with "reasonable written notice of the intent to offer the record - and must make the record and certification available for inspection - so that the party has a fair opportunity to challenge them." See also S.E.C. v. Franklin, 348 F.Supp.2d 1159, 1162-4 (S.D.Cal. 2004); U.S. v. Weiland, 420 F.3d

1062, 1072-3 (9th Cir. 2005) (discussing the plain language of
FRE 902(11) and the importance of strict compliance).  Here, the
government may offer a business record and attendant Rule 803(6)
and 902(11) declaration from Comcast.

**C.  Video and Still Images**

The government intends to display short segments from videos
and still images depicting the sexual exploitation of children
that the defendant received from, and/or distributed to, various
sources via the internet and that he stored on his computer.
Some of the images depicting the sexual exploitation of minors
are graphic, and the government respectfully requests that the
court advise the prospective members of the jury of this during
jury selection.

Given the very high burden of proof generally, and that the
government will need to prove the defendant acted knowingly in
committing the charged offense, the government should be given
wide latitude in deciding what is an appropriate number of images
to be given to the jury.  Since the government's burden is
extremely high - as the defense will argue in its closing - the
government should "not be restricted to a modest quantum of
evidence that will support the indictment."  United States v.
Gallo, 543 F.2d 361, 365 (D.C. Cir. 1976)

**D.   Defendant's Statements**

The government intends to introduce statements made by the
defendant to law enforcement on October 6, 2010 and October 7,
2010, about his conduct relating to the charged offense.  Under
the Federal Rules of Evidence, a defendant's statement is

admissible only if offered against him; the defendant conversely may not elicit his own prior statements.  Fed. R. Evid.801(d)(2)(A); <u>United States v. Fernandez</u>, 839 F. 2d 639 (9th Cir. 1988).  The government may also introduce statements of the defendant to third persons under Federal Rule of Evidence 801(d)(2).

    1.  <u>Admissions by Party-Opponent</u>

Under Federal Rule of Evidence 801(d)(2)(a) a statement is not hearsay if the statement is offered against a party and is (A) the party's own statement, in either an individual or a representative capacity.  Admissions by a party are treated as non-hearsay under Rule 801(d)(2)(A) and are thus admissible for their truth.  Bocchino & Sonenshein at 137.

    2.  <u>Statement That Party Adopts</u>

A statement is not hearsay if the statement is offered against a party and is "a statement of which the party has manifested an adoption or belief in its truth."  Federal Rule of Evidence 801(d)(2)(B).  A statement made by another person that is subsequently adopted by the party-opponent is regarded as an admission of the party-opponent and is therefore admissible for its truth under Rule 801(d)(2)(B).  Bocchino & Sonenshein at 137. A statement may be adopted by the party-opponent either expressly or through silence.  <u>Id.</u>; <u>See</u> <u>e.g.</u>, <u>United States v. Schaff</u>, 948 F.2d 501 (9th Cir. 1991)(defendant's silence during statement made in his presence by his sister regarding instructions he had given her was admissible); <u>United States v. Villarreal</u>, 764 F.2d 1048 (5th Cir. 1985)(defendant's failure to disagree could reasonably be taken as an admission).

3.   <u>Statements Offered by the Defendant</u>

If the government chooses not to introduce statements made by the defendant, the defendant may not introduce those statements as they would be hearsay (as they would not be offered by a party-opponent).

4.   <u>Applicability of Rule 106 to Defendant's Statement</u>

The government intends to introduce a redacted form of the defendant's videotaped statement from October 7, 2010.  The recording has been edited to remove inadmissible, irrelevant, confusing, and/or cumulative evidence.  There is no violation of Federal Rule of Evidence 106 ("the rule of completeness") if the edited version neither "distorts the meaning of the statement or excludes information substantially exculpatory of the declarant" nor excludes "portions of a statement...that are neither explanatory of [or] relevant to admitted passages."  <u>United States v. Dorrell</u>, 758 F.2d 427,434-35 (9th Cir. 1985).  <u>See also</u> McCormick on Evidence 56 (1994) ("The party invoking Rule 106 must specify the omitted portion which supposedly serves as essential context for the part the opposing party wants to introduce.").  The government believes that it has edited the video in a way that is fair to the defendant, does not omit any important contextual information, and does not exclude exculpatory information.  The defendant has been provided with both an edited and unedited copy of the video.  If there are any specific portions that the defendant believes are exculpatory or necessary for explanatory purposes to prevent misleading the jury, the defense has the burden to make known to the court which sections it believes must be included and state the reasons why.

5.   Observations of the Defendant's Demeanor During
     <u>Questioning</u>

Even when a subject is questioned in a custodial setting a
law enforcement officer can later testify about a defendant's
physical response to being confronted with incriminating
evidence.   <u>See</u> <u>United States v. Velarde-Gomez</u>, 269 F.3d 1023,
1031 (9th Cir. 2001).   The statement that the defendant provided
to Detective Hively on October 7, 2010, was audio and video
recorded, so the jury will be able to draw any conclusions it
wishes about the defendant's demeanor and its relevance, if any,
to the statements that he made.

**E.   Evidence Found During the Search of Defendant's Residence**

The government will offer items of evidence that were seized
from defendant's residence when a search warrant was executed on
October 6, 2010.   Among the items seized was the defendant's
computer and internal hard drives.   The prosecution need only
prove a rational basis from which the jury may conclude that the
exhibits did, in fact, belong to the defendant.   Fed. R. Evid.
401(a); <u>United States v. Blackwell</u>, 694 F.2d 1325, 1330 (D.C.
Cir. 1982); <u>United States v. Sutton</u>, 426 F.2d 1202 (D.C. Cir.
1969).

**F.   Demonstrative Exhibits/Summaries and Charts**

The government anticipates using one or more demonstrative
exhibits to help explain various matters to the jury, including
how computers and the Internet work, techniques used in analyzing
the defendant's computer, the information recovered, and the
significance of that information.   Should this type of
demonstrative exhibit be used during testimony, the court can

decide whether it will be provided to the jury during
deliberations.

The government may introduce or use at trial summaries and
charts.  The government may also use some of its charts and
summaries during the opening statement, the presentation of its
case-in-chief and/or during closing argument.  These charts and
summaries will substantially assist the jury in understanding the
government's proof in this case.

It is well-established that a trial court, in its
discretion, may allow the presentation of summary evidence to
guide and assist a jury in understanding and judging a factual
controversy.  See, Fed. R. Evid. 1006; United States v. Skalicky,
615 F.2d 1117, 1120-1121 (5th Cir. 1980); United States v. Cooper,
464 F.2d 648, 656 (10th Cir. 1972).  A foundation for the
admission of each chart and summary will be laid through the
testimony of a relevant witness, who will testify that the charts
and summaries accurately reflect information contained in
documents already in or to be admitted into evidence.  See United
States v. Lemire, 720 F.2d 1327, 1349 (D.C. Cir. 1983); United
States v. Pollack, 417 F.2d 240, 241 (5th Cir. 1969).

Courts have repeatedly allowed the use of charts and
summaries similar to the ones the government may intend to use in
this case.  United States v. Stephens, 779 F.2d 232 (5th Cir.
1985)(simple flow charts tracing the defendant's use of loan
proceeds); United States v. Porter, 821 F.2d 968, 974-975 (4th
Cir. 1987)(summary of telephone numbers); United States v.
Orlowski, 808 F.2d 1283, 1289 (8th Cir. 1986)(charts tracing the
disposition of the checks generating defendant's receipts and

reflecting defendant's total unreported income).  Courts allow
the charts when the evidence involves numerous exhibits which are
difficult to examine in court without the charts or the charts
are helpful to the jury.  <u>United States v. Stephens</u>, 779 F.2d at
239; <u>United States v. Scales</u>, 594 F.2d 558, 564 (6th Cir. 1979).

**G.   Stipulations**

     To date, the parties have not stipulated to the
admissibility of any items, although the government has raised
that possibility with defense counsel.  Counsel for the
government may again contact defense counsel to see what can be
done to present the case as efficiently as possible.  If any
stipulations are reached, the parties will advise the court
before the trial begins.  The government requests that the
defense not ask for any stipulation in front of the jury or refer
to any stipulations that were proposed and not entered.  The
government will adhere to the same rule of decorum.

**H.   Judicial Notice**

     Under the doctrine of judicial notice and Rule 201 of the
Federal Rules of Evidence, if requested by a party, the court
must take judicial notice of any undisputed facts which are
either (1) generally known with in the territorial jurisdiction
of the trial court, or (2) capable of accurate and ready
determination by resort to sources whose accuracy cannot
reasonably be questioned.  Fed. R. Evid. 201.  The government
may, for example, ask the court to take judicial notice of
certain undisputed facts, such as Modesto, California being
within the Eastern District of California.

**I.    Cross-Examination of Defendant's Character Witnesses**

The defendant may call character witnesses, although none have been discussed with government counsel or identified on a witness list, and the United States would therefore object to lack of notice.  In all cases in which evidence of character or a trait of character of a person is admissible, however, proof may be made by testimony (only) as to reputation or by testimony in the form of an opinion.

On cross-examination of the defendant's character witness, the government may inquire into specific instances of the defendant's past conduct relevant to the character trait at issue.  Fed. R. Evid. 405(a); <u>Michelson v. United States</u>, 335 U.S. 469, 479 (1948).  However, the defendant may not ask about specific instances of such conduct on direct examination.  Fed. R. Evid. 405(a).

**J.   Use of Witness Summaries and PowerPoint Presentations**

Because of the voluminous and technical nature of some of the computer evidence in this case, the government intends to rely on the testimony of computer forensics expert Detective Hively to summarize and analyze the contents of the information retrieved from the defendant's computer.  One or more of Detective Hively's forensic reports, as well as PowerPoint presentations prepared by him, may be offered as evidence.

Federal Rule of Evidence 1006 provides that "the contents of voluminous writings, recordings or photographs which cannot be conveniently examined in court may be presented in the form of a chart, summary or calculation."  The Ninth Circuit has recognized that summary evidence "can help the jury organize and evaluate

evidence which is factually complex and fragmentally revealed in the testimony of the multitude of witnesses." United States v. Shirley, 884 F. 2d 1130, 1133 (9th Cir. 1989), quoting United States v. Lemire, 720 F. 2d 1327, 1348 (D.C. 1983); see also United States v. Meyers, 847 F. 2d 1408, 1412 (9th Cir. 1988)(approving the use of a summary witness where the sequence of events was confusing and the chart contributed to the clarity of presentation).

Although the underlying materials upon which the summary testimony is based must be "admissible," they need not be actually admitted into evidence. United States v. Meyers, 847 F. 2d at 1412. The foundation for admission of such a summary is simply that the records are voluminous and that in-court examination would be inconvenient. United States v. Duncan, 919 F. 2d 981, 988 (5th Cir. 1990).

As mentioned above, the government believes that potential summary presentations by forensic examiner Detective Hively will aid the jury in understanding how computers and the Internet work, how images of child pornography can be traded on the Gnutella network, and how law enforcement was able to detect the defendant's illegal activities in this case.

**K.  Chain of Custody**

Evidence regarding the chain of custody concerning an item of seized evidence goes to the weight as opposed to the admissibility of the evidence. United States v. Matta-Ballesteros, 71 F.3d 754, 769 (9th Cir. 1995); United States v. Robinson, 967 F.2d 287, 292 (9th Cir. 1992). In fact, so long as the prosecution "introduce[s] sufficient proof so that a

reasonable juror could find the [proffered evidence is] in substantially the same condition as when they were seized", the evidence is admissible so long as there is a "reasonable probability the [evidence has] not been changed in important respects." Matta-Ballesteros, 71 F.3d at 768 (citing to United States v. Harrington, 923 F.2d 1371, 1374 (9th Cir. 1991); See also Fed. R. Evid. 901(a).

Furthermore, "in the absence of any evidence of tampering, a presumption exists that public officers 'properly discharge[d] their official duties." Harrington, 923 F.2d at 1374 (citing to United States v. Gallego, 276 F.2d 914, 917 (9th Cir. 1960)). Conversely, "merely raising the possibility of tampering is not sufficient to render evidence inadmissible." Harrington, 923 F.2d at 1374 (citing to United States v. Vansant, 423 F.2d 620, 621 (9th Cir. 1970)).

**L.  "Missing Witness" Argument**

The government believes that there may be witnesses that neither party chooses to call for testimony.  A prosecutor's comment on a defendant's failure to call a witness does not shift the burden of proof and is therefore permissible so long as there is no comment on the defendant's failure to testify.  United States v. Cabrera, 201 F.3d 1243, 1249 (9th Cir. 2000).  United States v. Hernandez, 145 F.3d 1433, 1439 (11th Cir. 1998).  A "missing witness" instruction is proper only if from all circumstances an inference of unfavorable testimony from an absent witness is a natural and reasonable one.  United States v. Bramble, 680 F. 2d 590, 591 (9th Cir. 1982).

**M.   Reciprocal Discovery**

     To date, the government has provided more than 258 pages
and/or items of discovery to the defense and has turned over
items as they have been unearthed or otherwise developed.   It
also has made available for review items that it has not been
possible, for legal or technical reasons, to reproduce.   The
government will continue to do this.   Since the inception of this
prosecution, the government has made available for the defense
review all of the items of evidence, whether intended to be used
as trial exhibits or not, over which it has custody or control.

     The government has requested reciprocal discovery, but has
received none.   Should the defendant seek to introduce any
evidence that should have been provided to the government as
reciprocal discovery, the government previously has successfully
moved to exclude it under Rule 16(d)(2) of the Federal Rules of
Criminal Procedure.

**N.   Presentation of Witnesses**

     It is possible that the government may have to call certain
witnesses out of order, or re-call witnesses to testify to
various events to maintain a chronological presentation.   The
government will strive for an orderly presentation of the
evidence to assist the jury, the court, and the defendant in
understanding the evidence being presented.

**V.**

**EVIDENCE ADMISSIBLE UNDER FEDERAL RULE OF EVIDENCE 404(b)**

     The government reserves its right to seek to admit evidence
produced in discovery to prove the defendant's motive, knowledge,
intent, opportunity, his absence of mistake in receiving and

possessing images of child pornography, as well as his identity

as the person responsible for them.

Federal Rule of Evidence 404(b) excludes the admission of

"other crimes, wrongs, or acts" (i.e., uncharged acts) to prove

action in conformity therewith but allows for their admission as

proof of "motive, opportunity, intent, preparation, plan,

knowledge, identity, or absence of mistake or accident." Fed. R.

Evid. 404(b). To determine whether evidence of other acts,

crimes or wrongs is admissible under Rule 404(b), the court

should consider each of the requirements set forth in the Supreme

Court's decision in United States v. Huddleston, 485 U.S. 683

(1988). First, the court should decide if the evidence is

offered for a proper purpose – "one other than to prove the

defendant's bad character or criminal propensity." Id. at 683.

Next, the court should decide whether the evidence is relevant to

some disputed issue in the trial. Id. And finally, the court

should assess whether the probative value of the evidence is

substantially outweighed by the danger of unfair prejudice that

its admission would create. Id.

The Ninth Circuit has enunciated a four-part test that

varies slightly from the factors set forth in Huddleston. In

United States v. Verduzco, 373 F.3d 1022, 1027 (9th Cir. 2004),

the Ninth Circuit held that evidence can be admitted under Rule

404(b) if: first, it proves a material point; second, the prior

act is not too remote in time; third, the evidence is sufficient

to show that the defendant committed the other act; and fourth,

that the act is similar to the offense charged, in cases where

knowledge and intent are at issue. See also United States v.

Estrada, 453 F.3d 1208, 1213 (9th Cir. 2006) (applying same test

and recognizing distinction between evidence sufficient to

support a finding, which the test requires, and conclusive

evidence, which the test does not require).

> "Unfair prejudice" within [Rule 403] context means an
> undue tendency to suggest decision on an improper
> basis, commonly, though not necessarily, an emotional
> one. Fed. R. Evid. 403 advisory committee's note. The
> "logical inferences" resulting from proffered evidence
> do not engender the "unfair prejudice" against which
> Rule 403 is directed.

United States v. Diaz, 878 F.2d 608, 615 (2d Cir. 1989). If

requested to do so, the court should give an appropriate limiting

instruction. Huddelston, 485 U.S. at 683; United States v.

Estrada, 453 F.3d 1208, 1213 (9th Cir. 2006) (finding, as support

for the admission of 404(b) evidence, the satisfaction of the

four factors discussed above and the trial court's use of a

limiting instruction to inform the jury that 404(b) evidence

could be considered only as proof of the defendant's intent or

knowledge).

In United States v. Curtin, 489 F.3d 935, 943 (9th Cir.

2007), the Ninth Circuit held that "acts" under 404(b) need not

be bad acts, so long as the acts are "relevant in such a way as

to avoid being nothing more than character or propensity

evidence." See also United States v. Johnson, 27 F.3d 1186, 1992

(6th Cir. 1994).

The evidence the government may seek to admit in this case

would be relevant, because it would tend to refute any claim by

the defendant that he does not have any sexual interest in

minors, that he was not the person who is responsible for the

child pornography files on his computer, and/or that he did not

view them.  It also goes to refute any suggestion that he may not
have been sufficiently sophisticated with technology to obtain
the images and keep them on his computer.  Accordingly, this
evidence should be admitted under Rule 404(b).

In <u>United States v. Brown</u>, 862 F.2d 1033 (3d Cir. 1988), the
Third Circuit addressed a challenge to a district court's
admitting under 404(b) uncharged child pornography videos that
were found in the defendant's home along with the video he was
charged with receiving, as well as his correspondence with the
company (which was actually a front set up by the government)
from which he ordered the charged video.  <u>Id</u>. at 1034-36.  On
appeal, the Third Circuit affirmed, explaining:  "We find no
difficulty with the admission into evidence of the child
pornography found, along with [the charged video)], in [the
defendant's] home.  Admission of this material was properly
within the discretion of the district court to show "proof of . .
. intent, . . . knowledge, . . . or absence of mistake or
accident" under   . . . 404(b)."  <u>Id</u>. at 1038.


## VI.

### POSSIBLE DEFENSES

The defendant has not given notice of any defense for which
the Federal Rules of Criminal Procedure require notice.

### VII.

### WITNESS EXCLUSION AND CASE AGENT DESIGNATION

Under Fed. R. Evid. 615, the government may move for the
exclusion of all witnesses until their testimony has been
completed.  The government will further move that lead case agent

1  Andrew Brandt and computer forensic specialist Art Hively be

2  exempt from the exclusion order, under Fed. R. Evid. 615.  <u>See</u>

3  <u>also</u> <u>United States v. Little</u>, 753 F.2d 1420, 1441 (9th Cir. 1985).

4  The government believes they should be excepted from any

5  sequestration order as their knowledge qualifies them as

6  essential to counsel in understanding and presenting the case

7  properly.  <u>See</u>, <u>e.g.</u>, <u>United States v. Connors</u>, 894 F.2d 987 (8th

8  Cir. 1990); <u>United States v. Seschillie</u>, 310 F.3d 1208 (9th Cir.

9  2002).  If the defendant seeks to have an investigator present at

10  counsel table, the government will not object.

11                            **VIII.**

12                        <u>**CONCLUSION**</u>

13       Should any legal issues arise that have not been covered in

14  this trial brief, the government respectfully requests leave to

15  submit additional briefing or argument as may be necessary.

16                           Respectfully submitted,

17  Dated: September 28, 2012    BENJAMIN B. WAGNER
                                 United States Attorney

18

19                   By:   /s/ David L. Gappa
                           DAVID L. GAPPA
20                         Assistant U.S. Attorney
                           MEGAN A. S. RICHARDS
21                         Special Assistant U.S. Attorney
                           Attorneys for Plaintiff

22

23

24

25

26

27

28